FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FEB 1 0 2025

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Stephanie Van Marter
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

MICHAEL JOHN STENSGAR,

Defendant.

Case No.: 2:24-CR-00115-TOR

Plea Agreement

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney the Eastern District of Washington, and Stephanie Van Marter, Assistant United States Attorney for the Eastern District of Washington, and Defendant MICHAEL JOHN STENSGAR ("Defendant"), both individually and by and through Defendant's counsel, Deputy Federal Defender Nathan Poston, agree to the following Plea Agreement.

1.    Guilty Plea and Maximum Statutory Penalties:

Defendant agrees to enter a plea of guilty to Count 2 of the Superseding Indictment filed on October 18, 2024, which charges Defendant with Possession with Intent to Distribute 40 Grams or More of Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi), a Class B felony.

PLEA AGREEMENT - 1

Defendant understands that the following potential penalties apply to each count:

    a.    a term of imprisonment of not less than 5 years no more than 40 years;

    b.    a term of supervised release of not less than 4 years and up to a lifetime;

    c.    a fine of up to $5,000,000; and

    d.    a $100 special penalty assessment.

2.    Supervised Release:

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post release supervision, up to the following terms:

    a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

    b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

    c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.    Denial of Federal Benefits:

Defendant understands that by entering this plea of guilty, Defendant is no longer eligible for assistance under any state program funded under part A of Title

PLEA AGREEMENT - 2

IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Defendant also understands that the Court may deny Defendant's eligibility for any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

4.    The Court is Not a Party to this Plea Agreement:

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a.    sentencing is a matter solely within the discretion of the Court;

b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c.    the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d.    the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e.    the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.    the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

5.    Potential Immigration Consequences of Guilty Plea:

If Defendant is not a citizen of the United States, Defendant understands the following:

PLEA AGREEMENT - 3

a. pleading guilty in this case may have immigration consequences;

b. a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c. removal from the United States and other immigration consequences are the subject of separate proceedings; and

d. no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

6. <u>Waiver of Constitutional Rights</u>:

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

a. the right to a jury trial;

b. the right to see, hear and question the witnesses;

c. the right to remain silent at trial;

d. the right to testify at trial; and

e. the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

PLEA AGREEMENT - 4

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

7.    Elements of the Offense:

The United States and Defendant agree that to convict Defendant of Count 2, the United States would have to prove beyond a reasonable doubt the following elements:

> *First,* on or about August 17, 2024, in the Eastern District of Washington, Defendant knowingly possessed a mixture or substance containing a detectable amount of fentanyl;
>
> *Second,* Defendant possessed it with the intent to deliver it to another person; and
>
> *Third,* Defendant possessed with intent to distribute more than 40 grams of fentanyl.

8.    Factual Basis and Statement of Facts:

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing.

On August 17, 2024, K9 Officer McNulty with the Colville Police Department, was patrolling on county road within the confines of the Colville Indian Reservation noticed a white crown Victoria parked in the middle of the road. The officer observed the vehicle back up into the wrong lane and take off.

PLEA AGREEMENT - 5

The officer followed behind and when he got closer, he noticed the front windshield was cracked and spider webbed.

Ofc. McNulty initiated a traffic stop for defective equipment and to further investigate the driver given the driving pattern he witnessed. When he approached the driver, he recognized the driver based upon previous law enforcement contact as Defendant, Michael J. STENSGAR ("STENSGAR"). He informed STENSGAR the reason for the stop and asked for his paperwork. STENSGAR complied and provided his license and registration as well as a "bill of sale" transferring ownership for the vehicle on July 30, 2024, to STENSGAR for $1,000.

Ofc. S. Paul was on scene and ran a driver's check while Ofc. McNulty was conversing with STENSGAR. Ofc. McNulty asked STENSGAR and his passenger (later identified as Kira Hernandez, "Kira') to step out of the vehicle and stand in front of Ofc. Paul's patrol car, so K9 "Loki" could conduct a free air sniff of the vehicle. STENSGAR and Kira stepped out of the vehicle leaving everything but a pack of cigarettes and Kira's cell phone. Ofc. McNulty informed STENSGAR K9 Loki was trained to alert to the odor of narcotics and asked STENSGAR if there would be anything in the vehicle K9 Loki would alert to. STENSGAR replied, "I do not know, this isn't even my car, there isn't anything in there", which was inconsistent with the bill of sale he had just provided.

K9 Loki was deployed and conducted a free air sniff of the white Crown Victoria. K9 Loki alerted to the odor of narcotics present in the vehicle. After K9 Loki alerted to the odor of narcotics, K9 Loki was returned to the patrol car and Ofc. McNulty again spoke to STENSGAR.

Meanwhile, Ofc. Paul had learned from a records check that STENSGAR had a tribal warrant for his arrest and detained him in handcuffs. Ofc. McNulty informed him that K9 Loki had positively alerted to his vehicle and that the vehicle was being seized in anticipation of obtaining a search warrant. STENSGAR was then transported on his warrant.

PLEA AGREEMENT - 6

Ofc. McNulty secured and sealed the white Crown Victoria with evidence tape and photographed the vehicle with the tape on scene. While securing the vehicle with evidence tape, he noticed there was a tooter pipe (known to be used for the ingestion of controlled substances) on the dash of the vehicle. The vehicle was then towed to North Central Washington Narcotics Task Force Office.

Ofc. McNulty applied for and obtained a tribal search warrant. The warrant was executed that same day and during a search of the trunk, he located a red backpack. Concealed within the red backpack, wrapped inside a Pendleton sweatshirt, was a pistol. Upon discovery of the pistol, Ofc. McNulty stopped and amended the search warrant to include firearms and ammunition. STENSGAR is a convicted felon prohibited form the possession of firearms as he served multiple sentences greater than 1 year, the last being a 58.5 month sentence out of Spokane County for unlawful possession of a firearm 1st degree in 2017.

The amended warrant was signed the same day and the search commenced. Looking in the same backpack, they discovered a second firearm, one being described as a 9 MM Smith and Wesson M&P 9 shield, and the other a Glock 27 .40 Cal that was loaded with a full magazine but an empty chamber. Det. Mason also located approximately 39.6 grams (total package weight) of white powder like substance consistent with characteristics of fentanyl powder.

As they continued searching the truck, they located metal knuckles with a switchblade knife and a cell phone. The search was again stopped to amend the warrant to include dangerous weapons and cellphones. Once the search was continued, Det. Mason located a cell phone under the driver's seat. After the search was completed, they seized in total 2 pistols, live ammunition of various calibers (9mm, .40 Cal, .22 Cal, 6.5 CMR), 4 magazines, suspected fentanyl pills, 2 baggies of white powder, paraphernalia, metal knuckles, and cellphones.

PLEA AGREEMENT - 7

Kika's purse was also located in the vehicle. A search of the purse revealed drug paraphernalia, along with 5 fentanyl pills and a small bindle of a white powdery substance.

The drugs were sent to the DEA lab and returned with the following results: 37.4 grams of powder fentanyl and 95 fentanyl pills weighing approximately 10.2 grams. Defendant therefore stipulates and agrees he possessed more than 40 grams of fentanyl with the intent to distribute it to another person or persons.

9.     The United States' Agreements:

a.     *Dismissal*:

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss Count 1 of the Superseding Indictment.

b.     *Not to File Additional Charges*:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Superseding Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

10.     United States Sentencing Guidelines Calculations:

Defendant understands and acknowledges that the United States Sentencing Guidelines ("USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a.     *Base Offense Level and Application of Relevant Conduct:*

The parties agree that Defendant possessed with the intent to distribute between 40 grams but less than 160 grams of fentanyl and that this amount properly accounts for his relevant conduct. Therefore, the partis agree and stipulate his offense level should be 24. *See* USSG § 2D1.1(c)(8).

PLEA AGREEMENT - 8

b.    *Special Offense Characteristics:*

The parties agree and stipulate Defendant possessed firearms in connection with this offense; therefore, two additional points should be added to his offense level pursuant to USSG §2D1.1(b)(1).

Defendant agrees that he is not eligible for application of the Safety Valve pursuant to 18 U.S.C. § 3553(f) and USSG §5C1.2 or the First Step Act.

c.    *Role Adjustments:*

The United States and Defendant agree that no role adjustment should be applied. *See* USSG §§3B1.1; 3B1.2.

d.    *Acceptance of Responsibility:*

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a), (b), if Defendant does the following:

i.    accepts this Plea Agreement;

ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

iv.    provides complete and accurate information during the sentencing process; and

v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

PLEA AGREEMENT - 9

e.    *Agreements Regarding Representations to the Court:*

The United States has a duty of candor to the tribunal.  If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

Regarding all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

        i.    The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

        ii.    The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

        iii.    The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

        iv.    The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

PLEA AGREEMENT - 10

v.     The United States and Defendant may each respond to any arguments presented by the other;

vi.    In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

vii.   In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

viii.  The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

PLEA AGREEMENT - 11

ix.     Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

f.     *No Other Agreements*:

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

g.     *Criminal History*:

The United States and Defendant have made no agreement and make no representations as to Defendant's Criminal History Category, which shall be determined by the Court at sentencing after the Presentence Investigation Report is completed. If Defendant is determined to be a Career Offender, the parties are free to modify their sentencing recommendations.

11.     Incarceration[1]

---

[1] At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement. The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court. The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing. In this Plea Agreement, the United States makes no promises or representations about what positions the United States will take or recommendations the United States will make in any proceeding that occurs after Defendant's original sentencing in the District Court.

PLEA AGREEMENT - 12

The parties agree to recommend a sentence of 60 months, the applicable mandatory minimum. However, if Defendant is determined to be a Career Offender pursuant to USSG § 4B1.1, the parties may modify their recommendation. If that should occur, the United States will agree to seek a sentence no higher than 151 months. Defendant is free to argue any lawful sentence.

12.    Supervised Release:

The United States and Defendant each agree to recommend 4 years of supervised release. Defendant agrees that the Court's decision regarding the term or conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

      a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

      b.    Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

      c.    Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment

PLEA AGREEMENT - 13

provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

13. Criminal Fine:

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

14. Judicial Forfeiture:

Defendant agrees to voluntarily forfeit and relinquish all right, title and interest he has in the following listed assets to the United States:

- Smith and Wesson, 9mm caliber firearm pistol bearing serial number JNH8009;

- a Glock, model 27, .40 caliber firearm bearing serial number TZP010;

- Nine rounds of Winchester 6.5 CM ammunition;

- Fifteen (15) rounds of 9mm caliber ammunition from various manufacturers;

- Twenty-one (21) rounds of .40 caliber ammunition from various manufacturers; and,

- a firearm magazine.

Defendant acknowledges that the assets listed above are subject to forfeiture to the United States pursuant to 21 U.S.C. § 853, as property used or intended to be used to commit or facilitate the offense Possession with Intent to Distribute 40 Grams or More of Fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi) (Count 2), to which Defendant is pleading guilty.

PLEA AGREEMENT - 14

Defendant agrees to take all steps as requested by the United States to pass clear title to the assets to the United States and to testify truthfully in any forfeiture proceeding. Defendant agrees to hold all law enforcement agents and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure, abandonment, or forfeiture of any asset covered by this agreement.

Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of the asset(s). Defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to the forfeiture.

Defendant waives further notice of any federal, state or local proceedings involving the forfeiture of the seized assets the Defendant is agreeing to forfeit in this Plea Agreement.

15.    Mandatory Special Penalty Assessment:

Defendant agrees to pay the $100 mandatory special penalty assessment per count of conviction to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

16.    Payments While Incarcerated:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

17.    Additional Violations of Law Can Void Plea Agreement:

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of

PLEA AGREEMENT - 15

sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

18.    Waiver of Appeal Rights:

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

In return for the concessions that the United States has made in this Plea Agreement, Defendant expressly waives all of Defendant's rights to appeal any aspect of Defendant's conviction and/or the sentence the Court imposes, on any grounds, with one and only one exception: if the Court both: (a) finds that Defendant is a Career Offender; and (b) imposes a custodial sentence longer than 151 months, Defendant may appeal the Court's finding that he is a Career Offender, as well as the reasonableness of the Court's sentence.

Defendant expressly waives Defendant's right to appeal any fine, term or condition of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

19.    Withdrawal or Vacatur of Defendant's Plea:

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

PLEA AGREEMENT - 16

a. Any obligations, commitments, or representations made by the United States in this Plea Agreement shall become null and void;

b. The United States may prosecute Defendant on all available charges;

c. The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

d. The United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim alleging a violation of Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

20. <u>Integration Clause</u>:

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

PLEA AGREEMENT - 17

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

### Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____    2/10/25
Stephanie Van Marter                Date
Assistant United States Attorney

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____    Feb 10, 2025
MICHAEL JOHN STENSGAR               Date
Defendant

PLEA AGREEMENT - 18

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____     2/10/25
Nathan Poston                        Date
Attorney for Defendant

PLEA AGREEMENT - 19